# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREG HUDGENS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-10684 |
| | ) | |
| v. | ) | Hon. Amy St. Eve |
| | ) | |
| PRATHA ENTERTAINMENT, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On May 20, 2016, Plaintiff Greg Hudgens brought the present six-count Complaint against Defendants Pratha Entertainment, William Soulier, Urszula Borodzinska, Mark Debowski, and Ramona Burns, collectively, "Defendants," alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and violations of Illinois law, including civil conspiracy, rescission, breach of contract, corporate oppression, and breach of fiduciary duty. Debowski removed this action from the Circuit Court for 18th Judicial Circuit, DuPage County to this Court on November 17, 2016. Before the Court is Defendant's motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendant's motion.

## BACKGROUND

Plaintiff Greg Hudgens, a Chicago resident, was a founder and shareholder in Pratha Entertainment ("Pratha"), an Illinois corporation that operates the Martini Room, a tavern in Kane County, Illinois. (R. 1, Compl. ¶ 1.) Soulier, Borodzinska, and Debowski, collectively, "the Pratha Defendants," all residents of DuPage County, were Plaintiff's fellow shareholders in

Pratha. (*Id*. ¶¶ 4-6.) Plaintiff alleges that the Pratha Defendants conspired with Ramona Burns, the final defendant, to frame Plaintiff for sexual assault. (*Id*. ¶¶ 27-28.)

Plaintiff alleges that he formed Pratha with a college roommate in 2004 and became the sole owner of Pratha in 2005. (*Id*. ¶ 10.) In August 2006, Plaintiff sold 23.75% of his shares in Pratha to Debowski and 23.75% of his shares to Borodzinska. (*Id*. ¶ 11.) Plaintiff also entered into a Stock Purchase Agreement with Soulier, under which Soulier acquired 10% of the shares of Pratha for $13,000, with $8,000 payable at the time of closing and the additional $5,000 due within 30 days of closing. (*Id*. ¶¶ 12-13.) In addition, the Stock Purchase Agreement required Soulier to make a $3,000 capital contribution to Pratha and to pay 10% interest on any amount due under the Agreement. (*Id*. ¶ 14.) Plaintiff alleges that Soulier paid $3,000 toward the $13,000 stock acquisition price, but never paid the remaining $10,000 or any interest, and never made a capital contribution to Pratha. (*Id*. ¶ 15.)

Between 2007 and 2010, Plaintiff had the Pratha Defendants primarily operate Pratha while he left Chicago to pursue other business interests. (*Id*. ¶ 16.) Plaintiff then returned to Chicago in 2010 and became more involved with Pratha's operations. (*Id*. ¶ 17.) In 2012, Plaintiff alleges that he discovered that the Pratha Defendants had misappropriated funds from Pratha for their personal expenses. (*Id*. ¶ 18.) Plaintiff further alleges that he confronted the Pratha Defendants about their misappropriation of funds, and as a result, in May 2012, they conspired with Ramona Burns to frame him for assault and thereby exclude him from Pratha's operations. (*Id*. ¶¶ 19-20.)

According to Plaintiff, on May 24, 2012, while in the Martini Room, Burns flirted with him and initiated physical contact with him. (*Id*. ¶ 21.) After the physical contact, Borodzinska called Plaintiff and told him that the Martini Room's cameras captured the physical contact

between Plaintiff and Burns. (*Id.*) Plaintiff alleges that Burns told him the Pratha Defendants were framing him so they could remove him from Pratha, and she offered to not move forward with sexual assault allegations if Plaintiff made her his partner at Pratha. (*Id.* ¶¶ 21-22.) On June 4, 2012, Plaintiff was arrested for committing battery against Burns. (*Id.* ¶ 23.) Plaintiff alleges that the Pratha Defendants have assisted with his prosecution on Burns' charges. (*Id.*) On June 8, 2012, Soulier sold 3% of his shares in Pratha to Borodzinska. (*Id.* ¶ 24.) Plaintiff alleges that on June 18, 2012, the Pratha Defendants held a Pratha shareholder meeting and voted Plaintiff out as President, banned him from the Martini Room, and advised Plaintiff that his shares in Pratha were worthless. (*Id.* ¶ 25.)

## LEGAL STANDARD

### I. Rule 12(b)(6)

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept

all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

## II. Pleading Standard

The parties dispute whether Plaintiff is required to plead the predicate acts of fraud with particularity under the heightened requirements of Federal Rule of Civil Procedure 9(b). In pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8. *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016). Specifically, Rule 9(b) requires a pleading to state with particularity the circumstances constituting the alleged fraud. *See* Fed. R. Civ. P. 9(b). Applying this standard to a RICO claim, the plaintiff must, at a minimum, "describe the two predicate acts of fraud with some specificity and state the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 658 (7th Cir. 2015), *reh'g denied*, 807 F.3d 839 (7th Cir. 2015), and *cert. denied*, 136 S. Ct. 1607 (2016). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, Plaintiff alleges Defendants committed the following predicate acts with the goal of ousting Plaintiff from control of Pratha: embezzlement, falsification of testimony, initiation of false charges, and operating Pratha in a manner designed to devalue Plaintiff's stock. (Compl. ¶ 32.) Assuming for the moment that these are in fact separate acts of racketeering activity,[1] three of the alleged predicate acts—embezzlement, falsifying testimony, and initiating false charges—

---

[1] The Court considers whether the alleged acts constitute racketeering activity below.

sound in fraud and thus are subject to the heightened pleading requirements of 9(b).[2] *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) ("a claim that sounds in fraud—in other words, one that is premised upon a course of fraudulent conduct—can implicate 9(b)'s heightened pleading requirements") (citations omitted); *French v. Corrigan*, 432 F.2d 1211, 1213 (7th Cir. 1970) (allegations of false testimony must be pleaded with particularity); *Perlman v. Zell*, 938 F. Supp. 1327, 1333 (N.D. Ill. 1996), *aff'd*, 185 F.3d 850 (7th Cir. 1999) (analyzing RICO embezzlement scheme under 9(b)); *Bernstein v. Heritage Union Life Ins. Co.*, No. 1:13-CV-3643, 2017 WL 395702, at *3 (N.D. Ill. Jan. 30, 2017) (explaining that action for abuse of legal process sounds in fraud). Plaintiff's final alleged predicate act—operating the business in a manner designed to devalue Plaintiff's stock—does not sound in fraud, and thus, for this predicate act Plaintiff need only "provide a short and plain statement of the claim" showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2).

## ANALYSIS

**I.      Federal RICO Claim**

"The civil RICO cause of action arises under 18 U.S.C. § 1964(c)," *RWB Servs., LLC v. Hartford Computer Grp., Inc*., 539 F.3d 681, 685 (7th Cir. 2008), which provides, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue. . ." 18 U.S.C. § 1964(c). Under § 1962(d), it is unlawful "for any person to conspire to violate any of the provisions" of § 1962. 18 U.S.C. § 1962(d). "The [RICO] conspiracy provision is concerned with the agreement to participate in an endeavor, which if completed would violate a substantive provision of the Act." *Domanus v. Locke Lord LLP*, 847 F.3d 469, 479 (7th Cir. 2017). Subsection (c) is the relevant substantive provision here. Under § 1962(c),

---

[2] As discussed below, Plaintiff's allegations fail under both the heightened pleading standard required by Rule 9(b) and the more lenient standard required by Rule 8.

5

it is unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A claim under § 1962(c) thus "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 822 (7th Cir. 2016). The Seventh Circuit has made clear that RICO was not "not intended to allow plaintiff to turn garden-variety state law fraud claims into federal RICO actions." *Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 472 (7th Cir. 2007); *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025-1026 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.").

## II. RICO Elements

For the following reasons, the Court finds that Plaintiff's boilerplate allegations fail to sufficiently allege several of the RICO elements, each of which is independently necessary to support a claim under RICO. The Court addresses each element in turn.

### A. Enterprise

Defendants first argue that Plaintiff has failed to allege that Defendants participated in the operation of an enterprise. Specifically, Plaintiff alleges that Defendants "have formed an enterprise for the purpose of harming the business interests" of Plaintiff. (Compl. ¶ 32.)

For purposes of the RICO statute, "enterprise" includes "any . . . legal entity" as well as "any union or group of individuals associated in fact although not a legal entity." *Boyle v. United States*, 556 U.S. 938, 944 (2009) (citing 18 U.S.C. § 1961(4)). To qualify as an "association-in-fact," an enterprise "must have at least three structural features: a purpose,

relationships among those associated with the enterprise, and longevity sufficient to permit these associates to continue to pursue the enterprise's purpose." *Id.* at 946. "An association-in-fact enterprise is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *Id.* (citations omitted). Put differently, it is a "continuing unit that functions with a common purpose." *Id.* at 948. The Supreme Court has clarified that an enterprise need not be limited to business-like entities. *Id.* It "need not have a hierarchical structure or a chain of command. . . [m]embers of the group need not have fixed roles. . . [t]he group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Id.*

The Seventh Circuit requires that RICO plaintiffs adequately allege an ascertainable structure through which the court can infer a common purpose or course of conduct. In *Rao v. BP Prod. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009), which the Seventh Circuit decided shortly after the Supreme Court's decision in *Boyle*, for example, the court affirmed the dismissal of a RICO claim for failure to allege a RICO enterprise. The plaintiff, a British Petroleum ("BP") gas station operator, claimed that a group of BP employees and BP itself conspired to remove him from ownership of BP franchises. *Id.* at 394-95. The court held that the plaintiff had failed to allege an enterprise with any real structure because different actors were involved in each alleged racketeering event and the allegations did not "indicate how the different actors [were] associated and [did] not suggest a group of persons acting together for a common purpose or course of conduct." *Id.*

Similarly, in *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 801-04 (N.D. Ill. 2014), the court dismissed a RICO claim for failing to allege a RICO enterprise where the plaintiffs claimed that employees and executives at FedEx Ground and FedEx Home Delivery conspired to force

independent contractor drivers to sell their rights to their delivery routes. The court dismissed the RICO claim because the plaintiffs failed to "attribute a common purpose to the alleged" RICO enterprise. *Id*. at 807. The court emphasized that a RICO enterprise must have a "purpose aside from the predicate acts themselves" and found that the "absence of factual allegations regarding the operations and purpose of the alleged enterprise [was] fatal to the claim." *Id*. at 808. *See also Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 804 (7th Cir. 2008) (upholding dismissal of RICO claim because plaintiff's allegations regarding enterprise contained "no hint of a structure"); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675-76 (7th Cir. 2000) (holding that RICO enterprise did not exist because, aside from naming the participants, plaintiff failed to allege any facts "as to the scope and duration of the enterprise"); *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 913–15 (N.D. Ind. 2013) (finding that plaintiff failed to allege a RICO enterprise because there were no allegations of "any ongoing interpersonal relationships" between the alleged participants and no coordination in pursuit of common ends).

Here, even assuming as true the limited facts alleged in the Complaint, Plaintiff's blanket statement that "Defendants have formed an enterprise" is insufficient to imply the existence of a RICO enterprise. While the Pratha Defendants independently might satisfy the RICO enterprise requirements due to their past and continuing involvement in Pratha Entertainment and their alleged goal of excluding Plaintiff from Pratha, Plaintiff has failed to allege any facts indicating that the Pratha Defendants and Ramona Burns formed an association that had the structural features necessary to constitute a RICO enterprise. Although the Complaint outlines in detail the corporate structure of Pratha Entertainment, like in *Rocha*, Plaintiff provides no factual detail whatsoever about the relationship between Burns and the Pratha Defendants or the "operations

independent contractor drivers to sell their rights to their delivery routes. The court dismissed the RICO claim because the plaintiffs failed to "attribute a common purpose to the alleged" RICO enterprise. *Id*. at 807. The court emphasized that a RICO enterprise must have a "purpose aside from the predicate acts themselves" and found that the "absence of factual allegations regarding the operations and purpose of the alleged enterprise [was] fatal to the claim." *Id*. at 808. *See also Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 804 (7th Cir. 2008) (upholding dismissal of RICO claim because plaintiff's allegations regarding enterprise contained "no hint of a structure"); *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675-76 (7th Cir. 2000) (holding that RICO enterprise did not exist because, aside from naming the participants, plaintiff failed to allege any facts "as to the scope and duration of the enterprise"); *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 913–15 (N.D. Ind. 2013) (finding that plaintiff failed to allege a RICO enterprise because there were no allegations of "any ongoing interpersonal relationships" between the alleged participants and no coordination in pursuit of common ends).

Here, even assuming as true the limited facts alleged in the Complaint, Plaintiff's blanket statement that "Defendants have formed an enterprise" is insufficient to imply the existence of a RICO enterprise. While the Pratha Defendants independently might satisfy the RICO enterprise requirements due to their past and continuing involvement in Pratha Entertainment and their alleged goal of excluding Plaintiff from Pratha, Plaintiff has failed to allege any facts indicating that the Pratha Defendants and Ramona Burns formed an association that had the structural features necessary to constitute a RICO enterprise. Although the Complaint outlines in detail the corporate structure of Pratha Entertainment, like in *Rocha*, Plaintiff provides no factual detail whatsoever about the relationship between Burns and the Pratha Defendants or the "operations

and purpose" of their alleged enterprise. *Rocha*, 15 F. Supp. 3d at 808. In fact, the alleged connection between the Pratha Defendants and Burns extends only to a phone conversation between Plaintiff and Burns in which Burns purportedly "informed [Plaintiff] he was being framed for rape by Burns in connection with the Pratha Defendants in an effort to have him removed from Pratha." (Compl. ¶ 21.) This undetailed allegation is insufficient to meet the standards for RICO enterprise laid out by the Supreme Court and the Seventh Circuit.

The Supreme Court requires plaintiffs to show that an alleged RICO enterprise was a "continuing unit that functions with a common purpose," *Boyle*, 556 U.S. at 948, and here, Plaintiff alleges no facts about how the parties were associated, the nature or extent of the alleged connection, or how they functioned as a "continuing unit." Additionally, like in *Browning*, Plaintiff fails to include any allegations indicating "any ongoing interpersonal relationships" between Burns and the Pratha Defendants, and like in *Stachon*, there are no allegations "as to the scope and duration" of their purported enterprise. *See Stachon*, 229 F.3d at 676; *Browning*, 955 F. Supp. 2d at 915. Here, Plaintiff makes the bald assertion that Defendants embezzled money and sought to exclude him from Pratha, without providing any factual detail about who took what action and how the other Defendants were involved. Like in *Limestone*, Plaintiff's allegations regarding enterprise simply contain "no hint of a structure." *Limestone Dev.*, 520 F.3d at 804.

In fact, rather than establishing the existence of a RICO enterprise, the alleged interactions between Plaintiff and Burns reinforce the notion that Burns operated independently and not in association with the Pratha Defendants. Plaintiff alleges that Burns offered to refrain from filing suit against Plaintiff for sexual assault if Plaintiff made Burns his partner at Pratha. (Compl. ¶ 22.) Plaintiff does not allege that Burns coordinated with the Pratha Defendants for

9

some common purpose. Instead, Plaintiff's allegations, taken as true, establish that Burns was an independent actor who sought to sacrifice the alleged purpose of the purported enterprise by negotiating directly with Plaintiff for her own personal gain. As in *Rao*, where the court rejected a RICO enterprise claim because there were different actors taking different racketeering actions, here, Plaintiff's RICO enterprise allegations are insufficient because Plaintiff has alleged different and seemingly independent actors pursuing uncoordinated racketeering actions. *Rao*, 589 F.3d 394-95.

Accordingly, the boilerplate allegations in the Complaint fail to establish that the Pratha Defendants and Ramona Burns operated an ongoing organization with the ascertainable structure necessary to establish an associated-in-fact enterprise under the RICO statute. *Id*. at 400-01 (affirming dismissal of claim because "boilerplate allegations" related to RICO enterprise were insufficient).

### B.  Predicate Acts

Defendants next argue that Plaintiff has failed to allege predicate acts of racketeering under RICO. In the Complaint, Plaintiff alleged the following predicate acts: embezzling money; falsifying testimony; initiating and continuing false charges; and conducting the business in a manner specifically designed to devalue Plaintiff's stock. (Compl. ¶ 25.) Plaintiff later attempts to re-frame his allegations by calling the predicate acts "extortion, obstruction of justice, and witness tampering." (Pl.'s Resp. to Defs.' Mot. to Dismiss at 10.) A party opposing a motion to dismiss may not, however, amend the complaint through arguments made in a brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). Plaintiff is thus limited to the predicate acts described in his Complaint.

The RICO statute enumerates predicate acts that qualify as "racketeering activity." 18 U.S.C. § 1961(1). Plaintiff's allegations fall into two categories: (1) allegations relating to his exclusion from Pratha and the mismanagement of Pratha and (2) allegations relating to Defendants' alleged efforts to frame him. None of Defendants' alleged conduct in either category falls under the RICO statute's definition of racketeering activity.

First, the only embezzlement crimes listed in § 1961(1) are "embezzlement from union funds" and "embezzlement from pension funds." 18 U.S.C. § 1961(1). While Plaintiff's allegations regarding Defendant's embezzlement are extraordinarily vague, Plaintiff clearly does not allege that Defendants' embezzled union or pension funds, and thus, Plaintiff's embezzlement claim does not qualify as racketeering activity. Plaintiff's vague allegation that Defendants devalued his stock is also not listed as racketeering activity in the RICO statute.[3] In short, Plaintiff's allegations regarding Defendants' mismanagement of Pratha and efforts to exclude him from Pratha are attempts to "fit a square peg in a round hole by squeezing garden-variety business disputes into [a] civil RICO action[]." *Midwest Grinding*, 976 F.2d at 1025-1026 ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour.").

Second, falsifying testimony and initiating false charges are similarly not listed in § 1961(1), and courts have specifically found that perjury and malicious prosecution do not qualify as RICO predicate acts. *Hornung v. Madarang*, No. C06-2340 TEH, 2006 WL 3190671, at *8

---

[3] In addition to not qualifying as racketeering activity, Plaintiff also does not have standing to pursue RICO claims for Pratha's losses or the devaluation of the company as a whole. *See Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir.1989) (holding shareholder lacked standing to pursue RICO claim for alleged injuries to corporation). Defendants, however, waived the standing argument by failing to raise it in their motion to dismiss. *Luellen v. City of E. Chicago*, 350 F. 3d 604, 612 n. 4 (7th Cir. 2003) (holding that failure to raise argument in opening brief waives argument).

(N.D. Cal. Nov. 2, 2006) (finding perjury and malicious prosecution are not RICO predicate acts); *Nakahara v. Bal*, No. 97 CIV. 2027 (DLC), 1998 WL 35123, at *8 (S.D.N.Y. Jan. 30, 1998) (commencing false criminal and civil proceedings is not racketeering activity under RICO); *Harris Custom Builders, Inc. v. Hoffmeyer*, No. 90 C 0741, 1994 WL 329962, at *4 (N.D. Ill. July 7, 1994) (filing of frivolous lawsuits is not a RICO predicate act of racketeering); *Von Bulow v. Von Bulow,* 657 F. Supp. 1134, 1143 (S.D.N.Y. 1987) (finding that "malicious prosecution may not constitute a RICO predicate act"). Accordingly, the predicate acts relating to Plaintiff's alleged false charges also do not constitute racketeering activity.

Plaintiff has therefore failed to allege any predicate acts of racketeering activity under RICO. The Court notes that, even if Defendants' alleged conduct could be considered racketeering activity, either under Plaintiff's re-framed allegations in his briefing or another theory, Plaintiff's allegations are so devoid of factual support that they would still fall short stating a RICO claim under either Rule 9(b) or even Rule 8(a). As the Seventh Circuit has made clear, it is not enough "for a plaintiff simply to allege the above elements in boilerplate fashion; instead, she must allege sufficient facts to support each element." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) (affirming dismissal of RICO claim because allegations were boilerplate and conclusory). Determining the sufficiency of any complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," and here, Plaintiff's conclusory allegations clearly fail to state a RICO claim even adopting all inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 679.

### C. Pattern of Racketeering Activity

Defendants also argue that Plaintiff has failed to allege that Defendants engaged in a pattern of racketeering activity. Because Plaintiff has not alleged any predicate acts of

12

racketeering, he cannot allege a pattern of racketeering activity. Even if Plaintiff had alleged predicate acts of racketeering, however, Plaintiff's allegations also fail to sufficiently allege a pattern of racketeering activity.

"A pattern of racketeering activity consists, at the very least, of two predicate acts of racketeering committed within a ten-year period." *Jennings,* 495 at 472 (citing 18 U.S.C. § 1961(5)). The predicate acts of the enterprise must be "sufficiently related to constitute a pattern." *Rao*, 589 F.3d at 399. To prove a pattern, plaintiffs must "satisfy the 'continuity plus relationship' test, which requires that the predicate acts be related to one another (the relationship prong) and that they pose a threat of continued criminal activity (the continuity prong)." *Bible*, 799 F.3d at 659. The relationship prong is satisfied if the racketeering acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id*. (citations and quotations omitted). Continuity can be either "closed-ended" or "open-ended." *Jennings*, 495 F.3d at 473. Closed-ended continuity "refers to criminal behavior that has come to a close but endured for such a substantial period of time that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future." *Id*. (citations and quotations omitted). Open-ended continuity is a "course of criminal activity which lacks the duration and repetition to establish continuity," and requires a showing of past conduct that by its nature projects into the future with the threat of repetition. *Id*. (citations and quotations omitted). "[I]n determining whether there is continuity, relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id*. (citations and quotations omitted).

### 1. Continuity

The Seventh Circuit has rejected RICO claims on the continuity prong where the plaintiff fails to allege any threat of continued criminal activity.

In *Empress Casino*, 831 F.3d at 820, for example, the plaintiffs, a group of casinos, alleged that former Illinois Governor Rod Blagojevich conspired with horse racetrack executives to pass a bill that would require the casinos to pay the racetracks a percentage of their profits in return for bribes disguised as campaign contributions. The Seventh Circuit, reviewing a summary judgment decision, held that no reasonable jury could have found a scheme with closed-ended continuity or open-ended continuity. *Id*. at 828-30. The alleged scheme did not exhibit closed-ended continuity because the relevant conduct was limited to one series of activity—payment of bribes followed by the passing of the bill—that all occurred within a finite 8-month period. *Id*. at 828. The alleged scheme was "time-limited" and did not "provide the type of distinct injuries or variety of predicate acts that would form closed-end continuity." *Id*. (citations omitted). There was no open-ended continuity because schemes that have a "natural ending point," such as the passing of a bill, offer no "specific threat of repetition." *Id*. at 829-30. The court rejected the plaintiffs' argument that Blagojevich's regular way of conducting business involved bribery and thus passing of a new bill would have required bribes, emphasizing that "once the bill was signed, the scheme was at its natural end point," and conjecture about future schemes was speculative. *Id*. at 830-31. *Contra H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 250 (1989) (finding pattern of racketeering activity where plaintiffs alleged six-year scheme in which defendants frequently bribed public officials).

Similarly, in *Kaye v. D'Amato*, 357 F. App'x 706, 715–16 (7th Cir. 2009), the Seventh Circuit upheld the dismissal of a RICO claim because the plaintiff failed to allege a pattern of

racketeering activity. The plaintiff claimed a variety of city officials collaborated to deny him the opportunity to purchase certain land parcels as the result of their participation in an illicit land swap agreement. *Id*. at 708. The court held that the plaintiff failed to allege continuity because the alleged scheme lasted only 7 months and was entirely focused on denying the plaintiff ownership of one piece of land, which once accomplished, would end the scheme. *Id*. Thus, the scheme offered "no threat of future harm" and was not a pattern of racketeering activity. *Id*. In *Gamboa v. Velez*, 457 F.3d 703, 709 (7th Cir. 2006), the Seventh Circuit rejected a RICO claim because the "complaint's allegations foreclosed any threat of continued criminal activity." The court explained that where a "complaint explicitly presents a distinct and non-reoccurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity for § 1962(c)." *See also Haynes v. City of Chicago*, No. 12 C 2980, 2014 WL 5423269, at *3 (N.D. Ill. Oct. 22, 2014) (no open-ended continuity because scheme was complete and no closed-ended continuity because only one victim and one scheme, so no threat of future harm); *Lockhart v. HSBC Fin. Corp.*, No. 13 C 9323, 2014 WL 3811002, at *8 (N.D. Ill. Aug. 1, 2014) ("single alleged scheme targeted at one victim is not a 'pattern of racketeering activity'").

In the Complaint, Plaintiff alleges continuity only once, with the conclusory allegation that "[t]here is continuity of racketeering activity by Defendants from May 2012 to the present." While Plaintiff's allegation implies open-ended continuity, Plaintiff has not sufficiently alleged either open-ended or closed-ended continuity. There is no open-ended continuity because once Plaintiff was arrested and removed from Pratha in June 2012, the alleged scheme was complete and had reached its "natural end point." *Empress Casino*, 831 F.3d at 829-30. Like in *Empress*

15

*Casino*, where the scheme was complete once Blagojevich signed the bill, here, the scheme was complete as soon as Defendants removed Plaintiff from Pratha. *Id*. And like in *Empress Casino*, Plaintiff alleges a scheme that not only is complete, but also was so specific to the parties and circumstances involved that it offers no threat of repetition in the future. Plaintiff has thus failed to allege open-ended continuity.

Plaintiff has also failed to allege closed-ended continuity. Plaintiff primarily alleges acts that took place in May and June of 2012 with the sole goal of removing him from Pratha—a goal that Defendants achieved as of June 18, 2012. (Compl. ¶ 25.) Unlike the six-year scheme with consistent racketeering activity in *H.J. Inc.*, 492 U.S. at 250, the scheme here was for a short period of time and had a limited goal focused on one victim. These allegations are more analogous to those in *Empress Casino*. In *Empress Casino*, the plaintiffs alleged an 8-month scheme involving one bribe that resulted in the passing of a bill that harmed one group of casino victims. *Empress Casino*, 831 F.3d at 820. Here, Plaintiff alleges a two to three month scheme that involved one agreement by Defendants to harm one victim—Plaintiff. As the court found in *Empress Casino*, the alleged scheme here was "time-limited" and did not "provide the type of distinct injuries or variety of predicate acts that would form closed-end continuity." *Id*. at 828; *see also Haynes*, 2014 WL 5423269, at *3 (rejecting closed-ended continuity because plaintiffs alleged only one victim, one scheme, and one injury). Like the schemes in *Kaye* and *Gamboa*, the scheme alleged here was "non-reoccurring" and had a "built-in termination point," so there is no implicit threat of continued criminal activity in the future. *Kaye*, 357 F. App'x at 708; *Gamboa*, 457 F.3d at 709; *see also Haynes*, 2014 WL 5423269, at *3 (rejecting closed-ended continuity because plaintiffs alleged only one victim, one scheme, and one injury). Plaintiff has thus not alleged open-ended continuity.

16

Accordingly, Plaintiff has not alleged sufficient continuity to constitute a pattern of racketeering activity.

## 2. Relatedness of Predicate Acts

In addition, the alleged predicate acts must be sufficiently related. As noted above, the relationship prong is satisfied if the racketeering acts have "similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Bible*, 799 F.3d at 659 (citations and quotations omitted). The Seventh Circuit has noted that "no single formula is required for a RICO pattern," which means that the test is "necessarily less than precise," requiring the court to exercise its judgment and common sense. *J.D. Marshall Int'l, Inc. v. Redstart, Inc.,* 935 F.2d 815, 821 (7th Cir. 1991).

Courts will dismiss RICO claims in which the plaintiff fails to sufficiently allege a relationship between the alleged predicate acts of racketeering. In *Simkus v. United Air Lines, Inc.*, No. 11 C 2165, 2012 WL3133603, at *3–4 (N.D. Ill. July 31, 2012), for example, the court dismissed a RICO claim because the plaintiff failed to satisfy the relationship requirement. The plaintiff alleged two predicate acts: (1) that the defendant gave him false information about his stock allocation and (2) that the defendant retaliated against him for complaining about asbestos violations. *Id.* at *4. The court found that these predicate acts were not sufficiently related because the two events were isolated and the defendant's retaliation against the plaintiff resulted from a complaint that was unrelated to the false stock information the defendant provided to the plaintiff. *Id.*

Similarly, in *Vild v. Visconsi*, 956 F.2d 560, 566–67 (6th Cir. 1992), the plaintiff alleged that the defendants had fraudulently induced him to enter into a marketing agreement and also

17

had committed extortion and fraud in the administration of the marketing agreement. The Sixth Circuit held that the two types of conduct alleged were "not related within the meaning of RICO" because they had distinct purposes, disparate results, and were directed at different victims. *Id.* at 566. The first alleged conduct had the purpose of inducing the plaintiff to sign a marketing agreement while the second alleged conduct had the purpose of forcing the plaintiff out of business by selling directly to his customers. *Id.* Similarly, the first line of conduct resulted in and primarily impacted the plaintiff while the second line of conduct was directed towards the plaintiff's customers and impacted those customers directly instead of the plaintiff. *Id. See also Martinek v. Diaz*, No. 11 C 7190, 2012 WL 2953183, at *8–9 (N.D. Ill. July 18, 2012) (finding that predicate acts in RICO scheme were not sufficiently related because the schemes had different purposes, different victims, and were accomplished using different means); *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 524 (5th Cir. 1996) (holding that the RICO predicate acts were not sufficiently related because there were two separate types of criminal activity with distinct and dissimilar purposes).

Plaintiff's allegations fail on the relationship prong because the alleged predicate acts are not sufficiently related to constitute a pattern of racketeering activity. Plaintiff alleges that the Pratha Defendants embezzled money from Pratha and devalued his shares starting in 2012, and he also alleges that they conspired with Burns in May 2012 to frame him for a crime. (R. 1 at ¶¶ 18-23.) Each alleged scheme is separate and independent, with different purposes, means, and victims. *See Martinek*, 2012 WL 2953183. Like in *Vild*, where the marketing agreement with one individual was found to be a different scheme than the attempt to steal that individual's customers, here the act of embezzling money from Pratha is an independent scheme with the primary purpose of personally enriching the Pratha Defendants. While that scheme harms

18

Plaintiff tangentially, the primary victim of the embezzlement is Pratha Entertainment because the embezzled money was Pratha corporate funds. The vague allegation that the Pratha Defendants devalued Plaintiff's shares is also a separate and distinguishable act that harms both Pratha Entertainment and Plaintiff while benefitting no one. Finally, the allegation that Defendants framed Plaintiff for a crime is again unrelated to the other alleged acts. Like in *Simkus*, where providing false information about stock options was found to be unrelated to retaliation against an employee, here, the scheme to frame Plaintiff for a crime is completely unrelated to any embezzlement. Framing Plaintiff is an attack on Plaintiff as an individual not in relation to his role in Pratha, and it involves drastically different means than embezzlement or the devaluation of stock. It also involves a different primary actor in Burns. In sum, none of the alleged predicate acts are sufficiently related to form a pattern of racketeering.

Plaintiff has alleged neither the existence of a RICO enterprise nor a pattern of racketeering activity, and therefore, the Court grants Defendants' motion to dismiss Plaintiff's RICO claim.

### III. State Law Claims

Because the Court grants Defendants' motion to dismiss Plaintiff's RICO claim, the Court does not have subject matter jurisdiction, and thus declines to exercise its supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3).

**CONCLUSION**

For these reasons, the Court grants Defendant's Rule 12(b)(6) motion to dismiss. The Court remands Plaintiff's state law claims to the Circuit Court for 18th Judicial Circuit, DuPage County.

**Dated:** March 14, 2017

                                    **ENTERED**

                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**